837 So.2d 191 (2003)
O.C. RUSH and Eloise Moffite
v.
WALLACE RENTALS, LLC.
No. 2002-CA-00193-SCT.
Supreme Court of Mississippi.
February 6, 2003.
Walter T. Rogers, Meridian, attorney for appellants.
John E. Howell, Meridian, attorney for appellee.
EN BANC.
CARLSON, J., for the Court.
¶ 1. This case is on appeal from the judgment of the Lauderdale County Chancery Court finding a disputed tax sale to be valid. Following the expiration for the date of redemption, Wallace Rentals, LLC, the tax sale purchasers of the property, recorded a tax deed in the chancery clerk's office. Wallace Rentals filed suit to confirm the tax sale and cancel cloud on the title. Eloise Moffite, the previous owner, disputed the validity of the sale, reasoning that: (1) the failure of the tax collector to advertise the land subject to tax sale in the name of the owner and title holder rather than the name appearing on the tax rolls rendered the sale void, and (2) the failure of the chancery clerk to diligently search and give notice to the land owner in order to redeem rendered the tax sale void. Finding that the chancellor was eminently correct, we affirm.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. The conveyance giving rise to this action occurred on June 23, 1997, when *192 O.C. Rush (Rush) conveyed to Eloise Moffite (Moffite) via quitclaim deed the following described real property:
Lot 10, Block 2, of and according to Slaughter's Survey in Section 8, Township 6, Range 16 East, Lauderdale County, Mississippi.
¶ 3. The physical address of this property was 2130 9th Avenue, Meridian, Mississippi 39301, the property was valued at $14,650.00, and the 1997 taxes which were due on January 1, 1998, were not paid. Rush's name appeared on the 1997 tax bill for this property, and Rush's address was listed as 1801 18th Avenue, Meridian, Mississippi 39301. Moffite's address was listed on the deed as 10159 Morgan Road, Meridian, Mississippi 39307.
¶ 4. The Lauderdale County Tax Collector caused notices for non-payment of property taxes to be published in the Meridian Star, the local newspaper, on August 17, 1998, and August 24, 1998. Inasmuch as this subject property was still assessed to Rush at the time of publication of the tax sale, the appropriate notice appeared in Rush's name. On August 31, 1998, this property was sold to Oliver Limerick (Limerick) for the outstanding taxes due. Since the property was never redeemed, Limerick eventually received a tax deed from the Lauderdale County Tax Collector, which tax deed was dated October 2, 2000, and appears of record in Book 1703, at page 72, in the office of the Chancery Clerk of Lauderdale County. Limerick then later conveyed the property to Wallace Rentals, LLC (Wallace) via quitclaim deed dated December 5, 2000, which quitclaim deed appears of record in Book 1703, at page 109, in the office of the Chancery Clerk of Lauderdale County.[1]
¶ 5. On June 27, 2000, the Lauderdale County Chancery Clerk tried to notify Moffite by certified mail of her right to redeem her property. The notice was sent to the address of 10159 Morgan Road, Meridian, Mississippi, 39307, but was returned, "attempted, not known." In late June or early July of 2000, the chancery clerk tried to notify Moffite of the tax delinquency via process served by the Sheriff's Department. The sheriff's return on the process (indicating a physical location at 10159 Morgan Road, Meridian, Mississippi 39307) revealed "attempted, not found." On July 11, 2000, the chancery clerk published in the Meridian Star a notice of "maturation to purchaser of the 1998 tax sale for the 1997 taxes unless redeemed prior to maturity date of August 31, 2000." This notice contained the name of Eloise Moffite, 10159 Morgan Road, Meridian, Mississippi, 39307.
¶ 6. On October 2, 2000, the chancery clerk signed a form affidavit which read:
Affiant made diligent search and inquiry to determining the street and post office address of Eloise Moffite (New Owner), Rush O.C., the reputed owner of said property and issued notice to the sheriff of Lauderdale County, Mississippi, the county of the residence of the said reputed owner, and mailed a copy of such notice to said reputed owner at his usual street address by certified mail, all in the form and in the manner required by Section 27-43-3, Mississippi Code of 1972; that the notice by mail was returned undeliverable and the personal notice required to be served by the sheriff was returned not found; that affiant then made further search and inquiry to ascertain the reputed owner's street and post office address.
That the acts of search and inquiry made by affiant in an effort to ascertain *193 the reputed owner's street and post office address are specified as follows:
Telephone directory, R.L. Polk City Directories for several years, telephone contact (probable relatives), records in Tax Collector's office, Tax Assessor's office, and Circuit Clerk's office voter registration file, also the deed which requires name and address of Grantee and Grantor when filed for record.
Affiant was still unable to ascertain the reputed owner's street or post office address after making such search and inquiry for the second time, and no additional notice was issued.
¶ 7. On December 5, 2000, the chancery clerk recorded a tax deed on the subject real estate to Limerick for the 1997 taxes. The property was then conveyed by Limerick to Wallace via quitclaim deed on December 6, 2000, which quitclaim deed was likewise recorded in the office of the Lauderdale County Chancery Clerk.
¶ 8. On January 17, 2001, Wallace filed in the Chancery Court of Lauderdale County a Complaint for Confirmation of Tax Sale, to Cancel Cloud and for Related Relief. Moffite answered the complaint on March 2, 2001, alleging, inter alia, that the tax sale was void because the chancery clerk failed to give proper notice as required by law. On that same day Moffite filed a Motion for Temporary Relief, requesting that the rental income generated from the land be deposited in the registry of the court, awaiting final disposition of the litigation. On March 13, 2001, Wallace filed a Motion to Remove Defendant Moffite's Counsel asserting that her attorney's law firm had various conflicts of interest regarding the subject property. An agreed order depositing the rental money in the registry of the chancery court was entered on March 20, 2001. Wallace's motion to remove Moffite's counsel was overruled by order of the chancellor on April 6, 2001. Inasmuch as Rush failed to plead, answer or otherwise defend this action, a clerk's default was entered on May 4, 2001, followed by the chancellor's entry of a default judgment on May 14, 2001.[2] The practical effect of the entry of this default judgment was that, as so adjudicated by the chancellor, Rush no longer had an interest in the subject real estate. By order of the chancellor, Wallace was allowed to file an amended complaint which, inter alia, contained a deraignment of title on the subject property. In due course, Moffite filed an answer to the amended complaint, and by way of a counterclaim, asserted that the tax deed and quitclaim deed should be canceled and held for naught.
¶ 9. After a hearing on December 5, 2001, Chancellor Sarah P. Springer entered a detailed 20-page memorandum opinion on December 12, 2001, wherein she made thorough findings of fact and conclusions of law, which included, inter alia the following:
This Court must consider not only actions of the Chancery Clerk's office, but also actions or lack of actions on the part of the record landowner. In this instance, the address on the 1997 quitclaim (sic) which conveyed the land to Eloise Moffite listed Eloise Moffite's daughter's residence address (10159 Morgan Road, Meridian, Mississippi 39307), and not Eloise Moffite's address (2113 Martin Luther King Memorial Drive, Meridian, Mississippi 39301).[3]

*194 This discrepancy occurred due to the fact that Eloise Moffite's cousin actually purchased the land from O.C. Rush in the name of Eloise Moffite with Eloise Moffite's permission. In fact, Eloise Moffite was not present at the closing, did not provide any financial assistance for the purchase, and never met with O.C. Rush. Eloise Moffite even testified that she did not consider the property to be her own, but considered the property to belong to her cousin, Alexia Rushing. Eloise Moffite also testified that she was not concerned with the assessment of taxes on the property and did not feel accountable for those assessed property taxes.
Eloise Moffite testified that she had resided at 2113(sic) Martin Luther King Drive, Meridian, Mississippi 39301 for thirty-five years and had only stayed at 10159 Morgan Road, Meridian, MS 39307, her daughter's home, for short periods of time to help with her grand-children. Mrs. Moffite also testified that she used both 2113(sic) Martin Luther King Drive, Meridian, Mississippi 39301, and 10159 Morgan Road, Meridian, MS 39307, to receive mail.
When Mrs. Moffite's daughter moved from 10159 Morgan Road, Meridian, MS 39307 in June of 1999, Mrs. Moffite never informed the Lauderdale County Tax Collector of any change of address. The Morgan Road address was never Mrs. Moffite's actual residence address. Thus, Eloise Moffite's actions and lack of actions have also directly led to the situation at hand. Mrs. Moffite made no attempt to correct the confusion caused by the improper address being placed on the quitclaim deed and even stated she did not consider the land at issue to be hers.
In the end, the chancellor concluded in her memorandum opinion:
This Court finds that the Lauderdale [County] Chancery clerk's office made a diligent search and inquiry to ascertain the (sic) Eloise Moffite's street and post office address. This Court further finds that Eloise Moffite has exerted no effort to correct the incorrect information in the quitclaim deed or to otherwise supply her address so the taxing authorities could notify her of her right of redemption. This Court further finds that Eloise Moffite has exerted no effort to pay the property taxes owed on the subject property. Thus, this Court finds that the tax sale is valid and that the tax deed vests title in the tax purchaser. This Court confirms the tax sale and cancels any and all clouds against said title.
¶ 10. The chancellor, on December 18, 2001, entered a final order consistent with this memorandum opinion, which prompted Moffite to file her motion for new trial and/or relief from judgment. Moffite's post-hearing motions were denied by the chancellor by judgment entered on January 11, 2002, and Moffite timely perfected her appeal to this Court by way of a filing of a notice of appeal with the trial court on February 7, 2002.

STANDARD OF REVIEW
¶ 11. This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990) (collecting authorities).

DISCUSSION

I. WHETHER THE FAILURE OF THE TAX COLLECTOR TO ADVERTISE LAND SUBJECT TO SALE FOR NON PAYMENT OF TAXES IN THE NAME OF THE *195 OWNER AND TITLE HOLDER RENDERS THE TAX SALE VOID AS TO THAT PROPERTY.

II. WHETHER THE CHANCERY CLERK WAS DILIGENT IN HER SEARCH AND INQUIRY TO NOTIFY THE LAND OWNER OF THE OPPORTUNITY TO REDEEM LAND FROM TAX SALE.
¶ 12. Moffite argues that the failure of the August 17, 1998, and August 24, 1998, legal notice publication to list her as record title holder makes the tax sale void. She argues that she purchased the property on June 23, 1997, and recorded the deed the same day in the chancery clerk's office. Notice in the Meridian Star appeared in the name of O.C. Rush, who Moffite says deeded her the property on June 23, 1997. She argues that notices mailed to her house were returned "not delivered" or "not found" and that she never received actual notice of the expiration of the redemption period.
¶ 13. Moffite also argues (1) that the clerks failed to perform the statutorily mandated "diligent search and inquiry" to notify her of her opportunity to redeem; (2) that process was served in this lawsuit to her proper address, though the incorrect address was listed on the process; and, (3) that because the process server could find her, the chancery clerk and the tax collector could have also found her. As these issues are very similar, they are combined for clarity.
¶ 14. Miss.Code Ann. § 27-43-3 (2002) states:
The clerk[4] shall issue the notice to the sheriff of the county of the reputed owner's residence, if he be a resident of the State of Mississippi, and the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same. The clerk shall also mail a copy of same to the reputed owner at his usual street address, if same can be ascertained after diligent search and inquiry, or to his post office address if only that can be ascertained, and he shall note such action on the tax sales record. The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county. Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.
. . . .
Notice by mail shall be by registered or certified mail. In the event the notice by mail is returned undelivered and the personal notice as hereinabove required to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post office address. If the reputed owner's street or post office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as hereinabove set out. If personal notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify therein the acts of *196 search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sales record. If the clerk is still unable to ascertain the reputed owner's street or post office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall file an affidavit specifying therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sale record ...
... The failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties herein prescribed for them.
Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.[5]
(emphasis added).
¶ 15. Miss.Code Ann. § 27-41-55 (2002) states:
Except as otherwise provided in Section 27-41-2 (provisions for collection of ad valorem taxes), after the fifth day of August in each year hereafter, the tax collector shall advertise all lands in his county on which all the taxes due and in arrears have not been paid, as provided by law, as well as all land which is liable to sale for the other taxes which have matured, as required by law, for sale at the door of the courthouse of his county or any place within the courthouse that the tax collector deems suitable to hold such sale, provided that the place of such sale shall be designated by the tax collector in the advertisement of the notice of tax sale on the last Monday of August. Such advertisement shall be inserted for two (2) weeks in some newspaper published in the county, if there be one, but in counties having two (2) court districts the lands shall be advertised and sold in the district in which such lands are situated and put up at the courthouse door thereof, and shall contain a list of the lands to be sold in alphabetical order by owner or in numerical order as they are contained in the assessment roll, in substance as follows... or by such other description as it may be assessed. Land in cities and towns shall be described in the advertisement as it is described on the assessment roll. Errors in alphabetical or numerical order in the published or posted list of lands to be sold shall not invalidate any sale made pursuant to such notice.
In addition to the foregoing provisions, and at the option of the tax collector, advertisement for the sale of such county lands may be made after the fifteenth day of February in each year with the sale of such lands to be held on the first Monday of April in each year, and all of the provisions which relate to the tax sale held in August of each year shall apply thereto.[6]
¶ 16. Miss.Code Ann. § 27-35-1(1) (2002) states (in pertinent part):

*197 It shall not be necessary to the validity of any assessment or of a sale of land for taxes that it shall be assessed to its true owner, but the taxes shall be a charge upon the land or personal property taxed and the sale shall be a proceeding against the thing sold and shall vest title in the purchaser without regard to who may own the land or other property when assessed, or when sold, or whether wrongfully assessed either to a person or to the state or any county, city, town, or village, or subdivision of either. Provided, however, that the lien for municipal taxes shall be secondary and subordinate to the lien for state and county taxes.[7]
¶ 17. In DeWeese Nelson Realty, Inc. v. Equity Services Co., 502 So.2d 310 (Miss. 1986), this Court held that even though the municipal clerk sent a redemption notice to the wrong address, she was diligent in searching and inquiring to ascertain the address of a corporation for redemption notice and thus the tax sale was not rendered void.
¶ 18. Moffite cites Brown v. Riley, 580 So.2d 1234 (Miss.1991), for the proposition that a landowner may not be deprived of his property as a result of nonpayment of taxes because the pertinent statutes are strictly construed in favor of the landowner. In Brown, this Court held that the chancery clerk had not substantially complied with the statutes in that the clerk had not adequately served either property owner with process by mail, nor was there proper service of process by the deputy sheriff. Additionally, in Brown, the chancery clerk also failed to give public notice of the sale 45 days prior to the actual sale.[8] Finally, the chancery clerk also failed to serve BOTH landowners with SEPARATE summonses, as the statute requires, opting, instead, to serve both landowners with one summons. The clerks in the case sub judice attempted to serve notice properly, while it is obvious that the public officials in Brown were negligent in the performance of their duties.
¶ 19. In Rains v. Teague, 377 So.2d 924 (Miss.1979), this Court held that "when property is properly described ... it may be assessed to an unknown person, or to any person though not the owner, and the assessment will nevertheless be legal ... These legal propositions have been uniformly followed by this Court and form the basis of our land taxing procedures." citing Wilkinson v. Steele, 207 Miss. 701, 43 So.2d 110 (1949); Carr v. Barton, 173 Miss. 662, 162 So. 172 (1935).
¶ 20. Under our standard of review, we must inquire whether the chancellor was manifestly in error in her assessment that the tax sale was in fact valid. The chancellor found (1) that the tax collector gave notice of a tax sale for delinquent taxes by description of the property on August 17, 1998, and August 24, 1998; (2) that Moffite had been sent notice via certified mail on June 27, 2000 to the address on the quitclaim deed conveying the property to her; (3) that on July 11, 2000, the chancery clerk noticed Moffite by publication with a description of the property and a listing of Moffite's name; and, (4) that on October 2, 2000, the chancery clerk swore to and signed the affidavit required by Miss.Code Ann. § 27-43-3.[9] Additionally, while the chancellor noted *198 that the deputy clerks testified that the signing of the affidavit did not necessarily mean that all the procedures listed therein had been followed, since it was a form affidavit, the chancellor did not find that the deputy clerks' failure to strictly comply with the affidavit was fatal.
¶ 21. The chancellor found that there was no information for Eloise Moffite listed in the 1998 and 2000 Meridian-Lauderdale Mississippi Polk County directories, and no information listed in the October 1999-2000 BellSouth directory, though the affidavit from the chancery clerk stated that they had consulted "Telephone directory, R.L. Polk City directories for several years." The chancellor found that in the 1999 Polk directory, as well as the October 1998-1999 BellSouth directory and the 1998-1999 East Mississippi-West Alabama directory, Eloise Moffite is listed as living on Martin Luther King Memorial Drive. The chancellor noted that one of the clerks admitted the affidavit "in this instance was false;" however, the chancellor declined to find that this fact was dispositive of the case, stating, "the affidavit is not the law the Clerk is required to follow. The Clerk must comply with the requirements of § 27-43-3 which simply seeks a diligent `search and inquiry.'" The chancellor further opined that, notwithstanding this "search and inquiry" (on the part of the clerk).... "landowners are still held accountable for their property taxes. Landowners are presumed to know `that all real property is assessed and taxed annually and bear some obligation to see that taxes on their property are paid each year.'"
¶ 22. The chancellor also addressed Moffite's actions. The address Moffite had placed on the 1997 quitclaim deed listed Moffite's daughter's address of 10159 Morgan Road, Meridian and not Eloise Moffite's own address. The chancellor found that this happened because Moffite's cousin actually purchased the land from Rush in Moffite's name and with her permission. As the chancellor noted in her memorandum opinion, "Moffite made no attempt to correct the confusion caused by the improper address." Indeed, the chancellor stated:
To grant Eloise Moffite the relief that she seeks would mean that a property owner can provide erroneous information at the time he or she acquires title to land, totally ignore the fact that real property taxes come due every year, make no effort to provide any correct information to the appropriate authorities, and then expect clerks charged with seeking information on seven hundred to a thousand other delinquent taxpayers to go beyond the current information available in their office to find his or her current address. The fact is that the Chancery Clerk did make diligent search and inquiry to find Eloise Moffite in conformance with the requirements of the law.
¶ 23. Accordingly, the chancellor found the tax sale valid because the failure to advertise the land subject to tax sale in the record title holder's name did not void the tax sale. She also found the chancery clerk was diligent in her search to locate Moffite. Moffite's true address was never on the quitclaim deed because she intentionally gave her daughter's address of 10159 Morgan Road, Meridian, instead of the Martin Luther King Memorial Drive address at which she testified she had lived for 35 years. Moffite was not even present at the closing of the sale of the land. She did not even find out the property was going to be bought in her name until approached and asked if it could be so purchased. Moffite even testified that *199 the property was not hers. She also testified that her cousin (who purchased the property in Moffite's name) paid the taxes and collected the rent on the property.
¶ 24. To underscore the egregiousness of Moffite's actions in this case, we discuss here two statutes which have thus far gone unmentioned, as they were not discussed in the briefs of the parties. Miss.Code Ann. § 27-3-51(2) (1999) states, in pertinent part:
The chancery clerk shall require that the current mailing address and current business address or employment telephone number, if any, and current residential telephone number, if any, of each grantor and grantee be included on all deeds as a prerequisite for the deed to be filed for record after July 1, 1987.............If the grantee may receive mail at the address of the property transferred, then the address of the transferred property shall be the mailing address of the grantee for the purposes of this section. The information provided by the grantor and the grantee shall be true and correct and complete to the best of his or her knowledge and belief under penalty of perjury under Section 97-9-61[10]. .... .... The fact that the information provided by the grantor or grantee may be incorrect, incomplete or false, however, shall not invalidate the deed or the filing thereof for record.[11]
(emphasis added). We are convinced that Moffite has to this point failed to understand and appreciate the seriousness of her actions by allowing her first cousin to purchase the property in her (Moffite's) name and then by intentionally placing her daughter's address on the deed as her (Moffite's) correct mailing address.
¶ 25. We emphasize here that we in no way infer that the burden is totally on the landowner/taxpayer in cases of tax sales and property redemption. Indeed, regardless of the action or inaction of a landowner concerning tax sales and property redemption, certain public officials have statutorily mandated duties regarding notice and due process. In the case before us today, the chancery clerk and her staff strictly complied with the applicable statutes, a partially false clerk's affidavit notwithstanding.[12] After all, as noted by the chancellor, it is strict compliance with the statute which is mandated. The statute requires, inter alia, the filing of "an affidavit specifying therein the acts of search and inquiry" regarding efforts to ascertain the landowner's street address and post office address. According to another portion of the statute, the clerk must be "diligent" in his/her search and inquiry. We further emphasize that today's decision, not unlike other decisions of this Court, is "fact-driven" in that other cases on this issue could cause a different outcome and *200 a public official's sworn "diligent search and inquiry" affidavit which is at least partially false could have considerably more import in its effect on the outcome of a case. This Court acknowledges that the affidavit in question was a "form" affidavit in an effort to comply with the statutory mandate that an affidavit be filed setting out the clerk's efforts in locating a delinquent tax-paying landowner; and, that the practical effect of having to "personalize" an affidavit for each of the approximately one thousand delinquent taxpayers as revealed in this record would be mind-boggling, to say the least. On the other hand, the citizens of this State, and certainly this Court, have a right to expect that when any one, but especially a public official, signs an affidavit under oath, the statements and allegations contained in the affidavit will in fact be true. As a matter of suggestion, the chancery clerks could perhaps consider a "check list" form affidavit containing a general list of the description of actions normally taken in a search and inquiry, and then merely "check off" on the list the action actually taken in any particular search and inquiry.
¶ 26. All of this having been said, based on the record before the Court, and based on the facts and circumstances peculiar to this particular case, we find that the record supports the findings of the chancellor, and we will not disturb her findings absent a showing that the chancellor was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied."
¶ 27. As found by the chancellor, the clerks were in fact diligent in their search. Though they may have not perused every single phone directory for Moffite's address, the clerks (1) consulted current phone directories; (2) consulted the tax collector's office for car tags; (3) reviewed the homestead exemption roll in the tax assessor's office; (4) checked the quitclaim deed; and (5) sent the notice to the address on the deed.

CONCLUSION
¶ 28. While we in no way lessen the responsibilities of our tax collectors and chancery clerks concerning strict compliance with their statutorily mandated responsibilities so as to protect the due process rights of all citizens of our State in relation to real property tax sales and property redemption, Mississippi law, on the other hand, simply does not permit landowners to be inattentive to their annual property taxes. We have held, and the chancellor correctly cited, "it is incumbent upon a landowner to be knowledgeable about the assessment on his property and to be diligent to make sure that his taxes are paid." Rains, 377 So.2d at 927 (also citing Carmadelle v. Custin, 208 So.2d 51 (Miss.1968)). The chancellor very attentively considered the evidence presented at trial and entered a thorough, well-reasoned 20-page memorandum opinion containing detailed findings of fact and conclusions of law. Not only can it be stated with certainty that the chancellor was not manifestly wrong, clearly erroneous or applied an erroneous legal standard, it can be clearly stated that the chancellor was eminently correct in finding that the tax sale was valid, that the tax deed properly vested title in the purchaser at the tax sale, that the purchaser's subsequent quitclaim deed to Wallace was valid, that the tax sale was confirmed, that all clouds upon the title to the property were removed and canceled, and that title to the property was properly vested in Wallace. The judgment of the chancellor is therefore affirmed.
¶ 29. AFFIRMED.
SMITH, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE *201 WRITTEN OPINION. PITTMAN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND DIAZ, J.
PITTMAN, C.J., dissenting:
¶ 30. I cannot join the majority today because I find the chancery clerk's efforts to locate and provide notice to Eloise Moffite of the impending sale of her property insufficient under our statutes and case law. The chancellor erred in holding the tax sale valid; thus the majority errs by affirming this judgment. Therefore, I respectfully dissent.
¶ 31. This Court must strictly construe Miss.Code Ann. § 27-43-3 (Rev.2002), and its requirements must be fully satisfied. Hart v. Catoe, 390 So.2d 1001, 1003 (Miss. 1980). It is the public policy of this state to favor and protect land owners from loss by its sale for taxes. Id. (citing Carmadelle v. Custin, 208 So.2d 51, 55 (Miss. 1968)). When examining this statute in light of the requirements of due process, this Court has stated:
Construing Miss.Code Ann. § 27-41-55 (Supp.1985) and Miss.Code Ann. § 27-43-3 (Supp.1985) together, notice must be given by personal service, mail, and publication before a landowner's rights are finally extinguished by the maturing of a tax deed.
DeWeese Nelson Realty, Inc. v. Equity Servs. Co., 502 So.2d 310, 314 (Miss.1986). This Court has further stated:
It goes without saying that the most important safeguard involving any person who stands to suffer from some official action is prior notice. This gives the recipient an opportunity to prepare himself and be heard. Notice, therefore, by far is the paramount factor and purpose of all process.
Brown v. Riley, 580 So.2d 1234, 1237 (Miss.1991) (citations omitted).
¶ 32. In Hammett v. Johnson, 624 So.2d 58, 59 (Miss.1993), this Court considered a case where notice of delinquent taxes and impending tax sale was given in the name of the previous owner of a parcel of land. Notice of this sale was also sent to the previous owner, and no attempt was made to contact the present owner of the property. Id. This Court concluded that the chancery clerk's failure to comply with the statute in providing notice to the present record owner of the property, the lack of due diligence exercised by the chancery clerk in ascertaining the identity of the record owner, and the lack of actual notice to the record owner rendered the tax deed void. Id.
¶ 33. Here, the published notice of the tax sale was given in the name of O.C. Rush, the previous landowner. Notice was also mailed to his address. The chancery clerk's first attempt to notify Eloise Moffite of the tax sale was the notice of the right of redemption mailed in 2000 to the address of the property in question, where Moffite's daughter had been living since 1999. This notice came back "attempted, not known." The Sheriff's attempts to provide notice of the expiration of the right of redemption to Moffite at that address also proved futile in 2002, as his return is marked, "not found." Thus, no actual notice was given to Moffite until the process server for Wallace Rentals served her with process (at her home, no less, in spite of the fact the summons was incorrectly addressed) in this action to remove cloud to title. This, of course, occurred after her right to redemption expired.
¶ 34. While the majority does not contest this, it affirms the chancellor's conclusion that the chancery clerk was diligent in attempting to ascertain Moffite's address for service of process. Although service was accomplished easily enough by Wallace Rental's process server, the chancery *202 clerk filed a form affidavit stating that Moffite could not be found through diligent search of various local phone books spanning several years, the records in the Tax Assessor's office, the Circuit Clerk's voter registration files, and the face of the deed itself. It was conceded at the hearing on this issue that had this affidavit been accurate and truthful, Moffite's address for notice purposes would have been discovered. This is understandable, as Moffite has been a resident of her Meridian home for over thirty-five years. Instead, contrary to the sworn affidavit, not all of the actions listed in the affidavit were completed.
¶ 35. First, as this is a standard form affidavit, we are provided with insight as to what is considered the bare minimum of due diligence required to properly serve notice on Mississippi-resident property owners of impending tax sales and their rights to redeem their property. We should hold the clerk's office to this minimum standard. Since the standard has not been met, as the testimony in the record indicates, the chancellor was manifestly wrong in affirming the tax sale as the clerk's office, by admission, was not diligent.
¶ 36. Second, the notion that a clerk would file a form affidavit purporting to swear to facts which provide adequate notice to satisfy due process, but later reveal that some or all of those efforts were not in fact undertaken, should be strongly discouraged. This is a shortcut to due process and, therefore, not due process at all. Certainly it is not in keeping with our strict interpretation of § 27-43-3, which contains no room for false affidavits, even if the statutory requirement of an affidavit has technically been satisfied.
¶ 37. I agree with the majority that property owners must be ever diligent to pay the property taxes they owe and remain knowledgeable about the assessments on their properties. However, tax sales are takings by government. The debt owed to the government in taxes is repaid in each tax sale. The damage done to property owners who were not provided with actual notice of the sale and right of redemption of their land, and who did not benefit from the chancery clerk's diligent efforts to ascertain their identity, outweighs the costs of the time it would take to properly accomplish the tasks outlined in the statute; especially where these costs are small and (at least partially) reimbursed through redemption or purchase. The chancellor and the majority err by placing too great a burden on the taxpayer and not enough of a burden on the government in the proper exercise of its duties.
¶ 38. I would reverse the judgment of the chancellor and remand to allow Eloise Moffite sixty days to redeem her property.
McRAE, P.J., AND DIAZ, J., JOIN THIS OPINION.
NOTES
[1] As will be noted, Moffite was neither left out nor forgotten during this entire process.
[2] See Miss. R. Civ. P. 55(a) & 55(b), respectively.
[3] The record actually reveals that Moffite's address was 2112 (not 2113) Martin Luther King Memorial Drive.
[4] As so noted in Miss.Code Ann. § 27-43-1, the "clerk" referred to in the statute is the chancery clerk.
[5] The current statute is identical to the statute in effect at all times relevant to this case.
[6] Again, the current statute is identical to the statute in effect at all times relevant to this case.
[7] Though there were 1997 amendments to this statute, the quoted portion here is identical to the language appearing in the statute in effect at all times relevant to this case.
[8] There was only forty-three days' notice.
[9] It must also be remembered, as reflected earlier in this opinion, that the chancery clerk also caused process to be issued to the sheriff for service upon Moffite, in order to inform her of the tax delinquency and her right of redemption, but this notice was returned by the sheriff as "attempted, not found."
[10] Miss.Code Ann. § 97-9-61 (Rev.2000), a criminal statute, states:

Persons convicted of perjury shall be punished by imprisonment in the penitentiary as follows: For perjury committed on the trial of any indictment for a capital offense or for any other felony, for a term of not less than ten years; for perjury committed on any other judicial trial or inquiry, or in any other case, for a term not exceeding ten years.
Additionally, any person found guilty of perjury "shall not thereafter be received as a witness to be sworn in any matter or cause whatever, until the judgment against him be reversed." See Miss.Code Ann. § 97-9-59.
[11] The language of this statute is the same as that in effect at all times mentioned herein.
[12] Unlike Moffite's intentional acts, the chancellor found as a fact in her Memorandum Opinion that "the Chancery Clerk testified that she swore and signed the affidavit believing that a diligent search and inquiry had occurred, as she had directed."