# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01540-SCT

*BETTY REED*

*v.*

*CHARLES RAY FLORIMONTE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2007 |
| TRIAL JUDGE: | HON. EUGENE LOVE FAIR, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ALEXANDER IGNATIEV |
| ATTORNEY FOR APPELLEE: | PENNY JONES ALEXANDER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 07/31/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the Forrest County Chancery Court's judgment voiding her purchase of real estate at a tax sale due to the Forrest County Chancery Clerk's failure to comply with the statutory notice requirement, Betty J. Reed appeals to us.  Finding no error, we affirm.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On June 22, 2000, Charles P. Moody and Dorothy H. Moody conveyed by warranty deed approximately four acres of land in Forrest County to their grandson, Charles Ray Florimonte.  The warranty deed listed the grantors' address as #19 Kittrell Road, Beaumont, MS 39423, and listed the grantee's address as 1107 W. Pine Street, Hattiesburg, MS 39401.  The warranty deed also listed separate phone numbers for the grantors and grantee.

However, it was not until more than a year later, on October 2, 2001, that the warranty deed was filed of record in the office of the Chancery Clerk of Forrest County. Neither Florimonte nor his grandparents paid taxes on the property beginning with the 2002 tax year, and the property was sold for taxes to Betty J. Reed on August 25, 2003, for $21.80.

¶3. On May 4, 2005, the Forrest County Chancery Clerk's office attempted to serve Florimonte with notice of the tax sale by certified mail at 1107 West Pine Street, which was the grantee's address listed on the Moody-to-Florimonte warranty deed. The certified mail was returned on May 5, 2005, as undeliverable, with the word "vacant" stamped on the envelope. On July 19, 2005, the Forrest County Sheriff received a Notice of Forfeiture for service upon Florimonte, thereby informing him that his land had been sold to Reed for taxes on August 25, 2003, and that redemption must be made by August 25, 2005. On July 21, 2005, the Forrest County Deputy Sheriff attested in his return that he left a copy of the summons at the 1107 West Pine Street address and that Florimonte could not be found for personal service.

¶4. On September 12, 2005, Forrest County Chancery Clerk Jimmy C. Havard prepared a tax deed stating that the Florimonte property was sold to Reed for unpaid taxes in the amount of $21.80 on August 25, 2003. On July 10, 2006, Pat Moody, Florimonte's mother, issued a check in the amount of $21.80 to the Forrest County Chancery Clerk, noting on the check that the payment was for "a filing fee," although the record reveals that the check was tendered in an effort to pay a portion of the back taxes. On July 11, 2006, Florimonte filed a Complaint to Void Tax Sale to Cancel Deed and to Remove Cloud on Title against Reed

2

in the Forrest County Chancery Court. On September 26, 2006, Reed filed her Answer, and on October 11, 2006, she likewise filed a Motion to Bring in Third-Party Defendants and for Change of Trial Date. On November 2, 2006, Reed filed a Counter-Complaint and Third-Party Complaint to Confirm and Quiet Title and for Ejectment, bringing in Jim Hood in his official capacity as Attorney General of the State of Mississippi, Jon Mark Weathers in his official capacity as District Attorney for Forrest County, Jimmy C. Havard in his official capacity as Forrest County Chancery Clerk, and any other persons or parties in interest. Also on November 2, 2006, the Forrest County Chancery Court entered an Agreed Order on Motion to Bring in Third-Party Defendants and for Change of Trial Date.

¶5. On November 22, 2006, Havard and Forrest County filed an Answer in which they did not deny the allegations of Florimonte's complaint. On December 15, 2006, Weathers filed an Answer which likewise did not deny the allegations of Florimonte's complaint. On December 19, 2006, a proof of publication was filed as to all interested parties, showing that notice had been published in the *Hattiesburg American* newspaper on December 1, 8, and 15, 2006. On January 24, 2007, the State of Mississippi filed an Answer to Reed's counter-complaint, stating that it had no interest in the subject land with the exception of possible taxes owed from past years and that the State consented to a hearing on Reed's counter-complaint. On the same day, the Forrest County Chancery Court entered its Judgment for Default of Unknown Interested Parties. On February 15, 2007, Reed filed an Application to Clerk for Entry of Default and Supporting Affidavit against Florimonte for his failure to answer her counter-complaint. On February 16, 2007, Florimonte's counsel sent Reed's

3

counsel a letter instructing him to not proceed with efforts to obtain a default. On February 20, 2007, Florimonte answered Reed's counter-complaint; however, on the same day, Havard, in his capacity as chancery clerk, entered a Docket of Entry of Default against Florimonte.

¶6. On May 8, 2007, a hearing was conducted in the Forrest County Chancery Court, Chancellor Eugene Love Fair, Jr. presiding. Florimonte testified that in June 2000 his grandparents, Charles P. Moody and Dorothy H. Moody, signed a deed conveying to him four acres of land in Forrest County as a gift. At the time, the Moodys were living in Beaumont, and Florimonte was residing at 1107 West Pine Street in Hattiesburg. Florimonte did not know why the deed was not recorded until October 2001. Florimonte explained that he did not receive a tax notice in 2000, 2001, or 2002. Florimonte testified that his permanent address was 19 Kittrell Road and that the 1107 West Pine Street property was family-owned property where he resided part-time when he was going through a divorce. He said his business correspondence was sent to 19 Kittrell Road and that was the address listed on his driver's license. Florimonte never received the original deed after it had been recorded in the Forrest County Chancery Clerk's Office. At the time the deed was recorded in October 2001, Florimonte was residing part-time at both the Kittrell Road and West Pine Street residences. Florimonte said he never gave the Postal Service a forwarding address when he moved temporarily to the West Pine Street residence. Florimonte testified that he eventually contacted the chancery clerk's office and was informed that the property had sold for taxes a day or two before and that he should contact Reed, the purchaser. Florimonte

4

attempted to pay the taxes but was told that it was too late. Florimonte's mother had paid the 2001 taxes. From 2003 through 2005, no one lived at the West Pine Street residence, which was partially destroyed in Hurricane Katrina. Florimonte admitted that he did not assist the chancery clerk's office in updating his current address and that he did not know that he should.

¶7. Lance Reid, a deputy chancery clerk, testified that after a tax sale occurs, the landowner has two years to redeem the property. Between 180 days and 60 days of title passing to the tax-sale purchaser, the chancery clerk must try to locate the property owner and give the owner notice by sending a Notice of Forfeiture via certified mail. The chancery clerk's office sent a first Notice of Forfeiture to the West Pine Street address listed on the deed, and this Notice was returned by the post office. The chancery clerk's office did not send a second notice because it could not find a second address for Florimonte. Another deputy chancery clerk, Rhonda Styron, completed an affidavit. At the hearing, Reid was questioned concerning Styron's affidavit, and the record reveals the following testimony:

> Q. From looking at the affidavit, can you–there are things to be checked there. There is a list of things she [Styron] was supposed to have done.
> A. Right.
> Q. Can you look at that and tell she actually did those things?
> A. I believe she did. It was our–for that year's taxes, the ones that Rhonda did that she searched the phone record, the city directory, voter registration, the things that we automatically do on each one of them. For whatever reason that year, she didn't check any, but that was what her duty was is to go and do those things.
> Q. Is there any indication that she contacted the attorney that filed–that prepared the deed?
> A. No.
> Q. Is there any indication that she contacted the grantor–

A.     The grantor?

Q.     –to see if they might know where the grantee would be?

A.     The grantor on the deed?

Q.     On the deed.

A.     No.

¶8.     The Chancery Clerk's office published a newspaper notice forty-five days before the redemption deadline, and the Forrest County Sheriff placed the notice on the door at the West Pine Street home. From this procedural history, Reid opined at the hearing that Florimonte did not get notice. Reid further testified in detail about the procedure generally taken by the Forrest County Chancery Clerk's office in a tax sale. First, the office attempts to deliver a landowner's notice to the address listed on the deed and the land roll. Following this procedure in today's case, the chancery clerk's office could find only the West Pine Street address. Next, the office attempted to serve process on Florimonte via the sheriff. Process was returned because Florimonte could not be found in the county, nor could a family member over age sixteen be found at the West Pine Street residence. Next, certified mail was attempted at the West Pine Street residence, but it was returned because the home was vacant. Newspaper publication against Florimonte ran on July 9, 2005, more than forty-five days prior to the redemption deadline, as required by statute. When all of these efforts failed, the office executed a search for another address. Reid said the standard procedure is to check the records in the county tax collector's office. The office then checks the voter registration rolls, the Polk City Directory, and the phone book. The 2003 Polk City Directory listed Florimonte's residence as being the West Pine Street home, but had no record of Florimonte for 2004 or 2005. Reid testified that there was no reason to think that the office had not

6

conducted an exhaustive search based upon Styron's affidavit. Reid further testified that the chancery clerk's office does not call closing attorneys or grantors in an attempt to find the property owner. Reid likewise testified that nothing about the process was out of the ordinary and was in fact in accordance with the way all other tax sales were handled.

¶9. At the hearing, Betty J. Reed testified that she paid the taxes on the four-acre property for the years 2002 through 2006.

¶10. On May 14, 2007, Chancellor Fair entered an opinion, holding that the tax sale was void because Florimonte never received personal service of process via the sheriff, noting that posting the notice on the door was not in accordance with the provisions of Mississippi Rule of Civil Procedure 4. Additionally, the chancellor found that Florimonte did not receive notice by mail because the chancery clerk failed to be diligent in locating his address. Finally, according to Chancellor Fair, the affidavit was insufficient because the deputy chancery clerk failed to fill in the blanks detailing her diligent search. On June 12, 2007, Chancellor Fair entered judgment in favor of Florimonte. On June 21, 2007, Reed filed a motion to alter or amend the judgment, and the chancellor denied this motion on August 6, 2007. Reed then perfected her appeal to this Court.

## DISCUSSION

¶11. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." **Rush v. Wallace Rentals, LLC**, 837 So. 2d 191, 194 (Miss. 2003) (citing **Bell v. Parker**, 563 So. 2d 594, 596-97 (Miss. 1990)).

7

¶12. There is only one issue for this Court to decide.

**WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE CHANCERY CLERK HAD FAILED TO COMPLY WITH THE NOTICE STATUTE.**

¶13. Reed argues that the chancery clerk complied with the notice statute because: (1) Florimonte was not entitled to actual notice pursuant to the specific language of the statute; (2) the statute does not require a particular form of a supporting affidavit from the chancery clerk in the event that personal notice is returned undeliverable; and (3) public policy favors the affirmation of tax deeds that properly vest.

¶14. Mississippi Code Annotated Section 27-43-3 (Rev. 2006) states in pertinent part:

> The clerk shall issue the notice to the sheriff of the county of the reputed owner's residence, if he be a resident of the State of Mississippi, and the sheriff shall be required to serve personal notice as summons issued from the courts are served, and make his return to the chancery clerk issuing same. The clerk shall also mail a copy of same to the reputed owner at his usual street address, if same can be ascertained after diligent search and inquiry, or to his post office address if only that can be ascertained, and he shall note such action on the tax sales record. The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county. Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.
> . . .
> Notice by mail shall be by registered or certified mail. In the event the notice by mail is returned undelivered and the personal notice as hereinabove required to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post office address. If the reputed owner's street or post office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as hereinabove set out. If personal notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify therein the acts of search

8

and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sales record. If the clerk is still unable to ascertain the reputed owner's street or post office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall file an affidavit specifying therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sale record.

. . .

Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.

Chancellor Fair, in his detailed opinion, interpreted Mississippi Code Annotated Section 27-43-3 to require the chancery clerk to issue personal service by summons, service by mail, and service by publication. The chancellor likewise stated:

6.    In the event the notice by mail is returned undelivered and the personal notice as hereinabove required to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post office address.

7.    If the reputed owner's street or post office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as hereinabove set out.

8.    If personal notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sales record.

9.    If the clerk is still unable to ascertain the reputed owner's street or post office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall

9

file an affidavit specifying therein the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post office address and said affidavit shall be retained as a permanent record in the office of the clerk and such action shall be noted on the tax sale record.

Should the clerk inadvertently fail to send notice as prescribed in this section, then such sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.

¶15. As this case turns on the affidavit, no other reason need be discussed. As the Court of Appeals has succinctly stated:

Statutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners. *Brown v. Riley*, 580 So. 2d 1234, 1237 (Miss. 1991). Any deviation from the statutorily mandated procedure renders the sale void. *Hart v. Catoe*, 390 So. 2d 1001, 1003 (Miss. 1980).

*Roach v. Goebel*, 856 So. 2d 711, 716 (Miss. Ct. App. 2003). Chancellor Fair found that the affidavit completed by Styron was unacceptable because "all blanks after the name and parcel number are blank." Not even the tax sale number was filled in. This Court has stated:

[I]t is strict compliance with the statute which is mandated. The statute requires, inter alia, the filing of "an affidavit specifying therein the acts of search and inquiry" regarding efforts to ascertain the landowner's street address and post office address. According to another portion of the statute, the clerk must be 'diligent' in his/her search and inquiry.

*Rush*, 837 So. 2d at 199. The case *sub judice* is factually similar to *Rush* but clearly distinguishable. In 1997, O.C. Rush conveyed a parcel of property to Eloise Moffite. *Id.* at 192. However, it was actually Alexia Rushing, Moffite's first cousin, who purchased the property, using Moffite's name with Moffite's permission. *Id.* at 194. Thus, Moffite "was not concerned with the assessment of taxes on the property and did not feel accountable for

10

those assessed property taxes." *Id.* When the tax bill came due, Rush's name was listed on the bill. *Id.* at 192. Accordingly, the Lauderdale County Tax Collector published notice in the local newspaper in Rush's name. *Id.* The property was sold for delinquent taxes, and the Lauderdale County Chancery Clerk attempted to notify Moffite by certified mail, which was returned as undeliverable. *Id.* Moffite's address listed on the deed was actually that of her daughter's, instead of the address where she had resided for thirty-five years. *Id.* at 194. The Lauderdale County Chancery Clerk signed a form affidavit which read:

> Affiant made diligent search and inquiry to determining the street and post office address of Eloise Moffite (New Owner), Rush O.C., the reputed owner of said property and issued notice to the sheriff of Lauderdale County, Mississippi, the county of the residence of the said reputed owner, and mailed a copy of such notice to said reputed owner at his usual street address by certified mail, all in the form and in the manner required by Section 27-43-3, Mississippi Code of 1972; that the notice by mail was returned undeliverable and the personal notice required to be served by the sheriff was returned not found; that affiant then made further search and inquiry to ascertain the reputed owner's street and post office address.
>
> That the acts of search and inquiry made by affiant in an effort to ascertain the reputed owner's street and post office address are specified as follows:
>
> > Telephone directory, R.L. Polk City Directories for several years, telephone contact (probable relatives), records in Tax Collector's office, Tax Assessor's office, and Circuit Clerk's office voter registration file, also the deed which requires name and address of Grantee and Grantor when filed for record.
>
> Affiant was still unable to ascertain the reputed owner's street or post office address after making such search and inquiry for the second time, and no additional notice was issued.

837 So. 2d at 192-93.

¶16. Litigation ensued, and after an evidentiary hearing, the chancellor held that the tax sale was valid. En route to her determination that the tax sale was valid, the chancellor found, *inter alia*, that although some of the information in the chancery clerk's affidavit was false, the evidence revealed that the chancery clerk's office had been diligent in its efforts to locate Moffite; and that Moffite had knowingly provided false information on the deed in that she allowed her name to be used as the grantee, even though her first cousin, Alexia Rushing, actually purchased the property, and Moffite further allowed her daughter's address to be used as the grantee's address on the deed. *Id.* at 198-99. The chancellor also found that "[t]o grant Eloise Moffite the relief that she seeks would mean that a property owner can provide erroneous information at the time he or she acquires title to land, totally ignore the fact that real property taxes come due every year, make no effort to provide any correct information to the appropriate authorities, and then expect clerks charged with seeking information on seven hundred to a thousand other delinquent taxpayers to go beyond the current information available in their office to find his or her current address." *Id.* at 198.

¶17. On appeal, this Court discussed the egregiousness of Moffite's actions by pointing out that she had violated Mississippi Code Annotated Section 27-3-51(2) and, accordingly, she could have been charged with perjury under Mississippi Code Annotated Section 97-9-61. 837 So. 2d at 199.

¶18. In affirming the chancery court judgment upholding the validity of the tax sale, we emphasized that while we in no way minimized the duties of chancery clerks and tax collectors to strictly comply with the applicable statutes relating to tax sales, our laws

likewise do not permit landowners to ignore their responsibilities to be diligent in timely paying accrued property taxes. *Id.* at 199-200. We further admitted that our decision in *Rush*, like many cases, was "fact-driven," meaning that other cases involving a similar issue could cause a different disposition depending on the facts and circumstances peculiar to the particular case. *Id.*

¶19. It is clear that the facts in *Rush* differ from those in the case *sub judice*. Moffite's intentional misconduct is altogether different from Florimonte's oversight. But most importantly, the facts surrounding the chancery clerk's affidavit are different in today's case.

¶20. On the face of the affidavit, *nothing* was done to find Florimonte. It is not enough for Reid, another deputy chancery clerk, when asked whether Styron did a diligent search, to testify "I believe she did." Styron did not testify at trial, and Reid had no personal knowledge as to what Styron actually did (or did not do).

¶21. Thus, taking Styron's affidavit as true, the Forrest County Chancery Clerk's office did not heed this Court's admonition in *Rush* concerning the appropriate documentation to verify the "due diligence" exercised by the chancery clerk's office in attempting to locate the property owner after a tax sale, but prior to the redemption deadline. The form affidavit had blanks to check indicating a search had occurred in the "Phone Directory," with the "City Tax Collector," and in the "City Tax Directory." Also, there was a blank to list "Other" sources used. On the face of the affidavit, Styron did not check any blanks and did not note any sources of her search. Accordingly, we find that the chancellor did not err in finding that

13

the Forrest County Chancery Clerk's office did not comply with the notice requirements of the statute.

¶22. Additionally, "[i]n Mississippi, it is public policy to favor and protect landowners from loss by its sale for taxes." *Lawrence v. Rankin*, 870 So. 2d 673, 676 (Miss. Ct. App. 2004) (citing *Carmadelle v. Custin*, 208 So. 2d 51, 55 (Miss. 1968)).

¶23. In sum, this issue is without merit.

## CONCLUSION

¶24. For the reasons stated, the Forrest County Chancery Court's judgment entered in favor of Charles Ray Florimonte, voiding the tax sale of Florimonte's property to Betty J. Reed, and restoring title to the subject property to Florimonte, is affirmed.

¶25. **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**