# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01293-SCT

*BARON FOREMAN*

*v.*

*DHP1, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2023 |
| TRIAL JUDGE: | HON. MARGARET ALFONSO |
| TRIAL COURT ATTORNEYS: | DEREK R. CUSICK |
| | RUSSELL SCOTT MANNING |
| | LEWIE G. "SKIP" NEGROTTO, IV |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEWIE G. "SKIP" NEGROTTO, IV |
| ATTORNEY FOR APPELLEE: | RUSSELL SCOTT MANNING |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/27/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.   We have repeatedly said that taking people's property for failure to pay taxes is difficult.  We say so once again.  The issues in this case center on whether the statutory procedures for providing notice of the expiration of the redemption period for a tax sale were satisfied by the Hancock County Chancery Clerk.  Ownership of the land at issue changed during the statutorily mandated time for notice of expiration of the redemption period for a tax sale.  The chancellor determined that the chancery clerk failed to satisfy the statutory notice requirements and declared the tax sale void.  This Court finds that the tax sale is void.

Accordingly, the chancellor's grant of summary judgment in favor of DHP1, LLC, is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. The material facts are undisputed. In 2006, Emmett Hotard acquired "Lots 16 and 17, Replat of Leisure Time Park Subdivision" in Hancock County. In 2007, The Peoples Bank, Biloxi, Mississippi, entered into a loan agreement with Emmett, who used the two Leisure Time lots as security for the agreement. Emmett eventually defaulted on the promissory note with The Peoples Bank, incurred multiple federal tax liens and failed to pay his state ad valorem property taxes on Lot 17. On August 27, 2012, at the Hancock County tax sale, Ken Foreman purchased Lot 17.

¶3. On June 25, 2013, The Peoples Bank assigned its interest in the promissory note and deed of trust to Eric Hotard, Emmett's brother.[1] Eric then initiated judicial foreclosure proceedings. An Order of Judicial Foreclosure was filed in the chancery court on February 12, 2014, and recorded in the land records on February 24, 2014. The order found that Emmett owed Eric the amount due under the promissory note, Eric was declared the first lienholder on the property, and Nicholas Van Wiser was appointed special commissioner with authority to advertise and sell the property. DHP1 purchased Lots 16 and 17 at a foreclosure sale on April 16, 2014. The sole member of DHP1 is Eric Hotard.

---

[1]A Corrected Assignment of Promissory Note and Deed of Trust was signed on October 4, 2013, due to a scrivener's error in the June 25, 2013 assignment.

¶4. On May 7, 2014, the chancery clerk sent a notice via certified mail to "HOTARD EMMETT P" at "LEISURE TIME DR DIAMONDHEAD, MS 39525" to notify him that Lot 17 was sold for 2011 taxes to Ken Foreman and that "title to said land will become absolute in [Ken Foreman] unless redemption from said tax sale is made on or before the 27th day of August 2014." This letter was returned to the clerk's office on May 12, 2014, marked "Return to Sender Insufficient Address Unable to Forward."

¶5. Additionally, on May 7, 2014, the clerk's office sent by certified mail two lienholder notices of the tax sale and redemption period. One was sent to Eric's address in Virginia. Eric's lienholder notice was delivered on May 12, 2014. The other lienholder notice of the tax sale and redemption period was delivered to The Peoples Bank. Further, a notice of the tax sale and redemption period, postmarked May 7, 2014, was sent to Van Wiser.

¶6. On May 9, 2014, the chancellor signed an Order of Final Judgment Approving Special Commissioner's Report that approved the foreclosure sale and authorized Van Wiser to "execute, deliver and to cause to be filed" a deed to DHP1 for the foreclosed property, "Lots 16 and 17, Replat of Leisure Time Park Subdivision[.]"

¶7. The record contains a copy of the notice of the tax sale and redemption period to Emmett that is dated the "7th day of February 2014" and bears a notation of "served." Under the word "served" is the signature "A. Longfellow 385" and the date of May 20, 2014. Although Emmett's name and Leisure Time Drive address are typed on the notice, Van Wiser's address is hand written on the notice. Timothy Kellar, the chancery clerk, stated in

a deposition that the notice was served on Van Wiser by Longfellow, a sheriff's deputy.

¶8.     On May 28, 2014, the Special Commissioner's Deed transferring ownership of the property to DHP1 was recorded. Notice to Emmett of the maturity of the tax sale redemption period was published in The SeaCoast Echo on July 9, 2014.

¶9.     On August 27, 2014, the tax sale redemption period matured. A document entitled "First Affidavit - Tax Sale" was filed on November 17, 2014, stating that three employees of the clerk's office had "made a diligent effort" to locate Emmett Hotard by searching the tax collector's land roll, the tax assessor's homestead records, the telephone book and the internet. A clerk's conveyance of Lot 17 to Ken Foreman was recorded on November 21, 2014. In November 2017, Ken Foreman conveyed Lot 17 to Baron Foreman via quitclaim deed.

¶10.    On January 27, 2020, DHP1 filed this complaint to confirm and quiet title against Baron Foreman alleging that the tax sale is void for failure to satisfy the statutory requirements. Baron answered and counterclaimed that all statutory notice requirements were satisfied and that he should be vested with perfect title. The parties entered into discovery and deposed Kellar. Kellar testified that Emmett Hotard was the owner of record until the Special Commissioner's Deed was signed and, although statutorily entitled to notice, did not find evidence in the clerk's records that Emmett was served by mail or personal service.

¶11.    The chancellor granted summary judgment in favor of DHP1 on October 30, 2023,

finding that the clerk's office failed to make a diligent inquiry in the land records when an alternative and correct address for Emmett was "easily discoverable" on the Deed of Trust with The Peoples Bank that encumbered the property. The chancellor noted other errors with the notices sent out by the clerk's office and declared the tax sale void. The tax deed to Ken Foreman and the quitclaim deed to Baron Foreman were declared void, and Baron retained a lien on the property for reimbursement of "all taxes and fees paid by him plus any and all accrued interest[.]" Baron appeals this final order.

## ISSUES PRESENTED

¶12. On appeal, Baron argues the following two issues:

I        Whether the chancery court erred by holding that failure to provide Emmett Hotard with notice of forfeiture at an alternative address after he no longer had any interest in the subject property voids the tax sale.

II.      Whether the chancery court erred by failing to hold that notice of forfeiture received by DHP1's sole member via publication and certified mail within the statutory redemption period was insufficient to impart notice to DHP1 and validate the tax sale.

Issue one is dispositive, so this Court will not address the second issue.

## STANDARD OF REVIEW

¶13. "In reviewing a chancellor's grant or denial of" a motion for summary judgment, this Court employs "a *de novo* standard of review." *Barham v. Miss. Power Co.*, 266 So. 3d 994, 997 (Miss. 2019) (citing *Hosemann v. Harris*, 163 So. 3d 263, 267 (Miss. 2015)). This Court also reviews issues of statutory interpretation under a de novo standard of review. *Greenville Pub. Sch. Dist. v. Thomas*, 352 So. 3d 190, 192 (Miss. 2022) (citing *Finn v.*

5

*State*, 978 So. 2d 1270, 1272 (Miss. 2008)).

## DISCUSSION

I.   **Whether the chancery court erred by holding that failure to provide Emmett Hotard with notice of forfeiture at an alternative address after he no longer had any interest in the subject property voids the tax sale.**

¶14.   "This Court has held that '[s]tatutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners.  Any deviation from the statutorily mandated procedure renders the sale void.'" *Campbell Props., Inc. v. Cook*, 258 So. 3d 273, 277 (Miss. 2018) (alteration in original) (quoting *Reed v. Florimonte*, 987 So. 2d 967, 973 (Miss. 2008)).

¶15.   Mississippi Code Section 27-43-1 (Rev. 2024) (emphasis added) provides in relevant part:

> The clerk of the chancery court shall, within one hundred eighty (180) and not less than sixty (60) days prior to the expiration of the time of redemption with respect to land sold, either to individuals or to the state, be required to issue notice to the *record owner* of the land sold as of one hundred eighty (180) days prior to the expiration of the time of redemption . . . ."

The parties agree that Emmett was the record owner as of one hundred and eighty days prior to the end of the redemption period.

¶16.   Mississippi Code Section 27-43-3 mandates the type and manner of service of the notice, but, instead of using the term "record owner," Section 27-43-3 uses the term "reputed owner."  Miss. Code Ann. § 27-43-3 (Rev. 2024) ("The clerk shall issue the notice to the sheriff or a constable of the county of the reputed owner's residence . . . .").  Foreman

contends that there is significance in this distinction. Foreman argues that regardless of Emmett's record ownership, Section 27-43-3 required notice to be sent to the "reputed owner," who, he contends, is DHP1, the buyer at the foreclosure sale on April 16, 2014. Foreman argues that "reputed owner" is defined in Black's Law Dictionary as "one who has to all appearances the title to and possession of property; one who, from all appearances or from supposition is the owner of a thing." *Reputed Owner*, Black's Law Dictionary (6th ed. 1990).

¶17. Foreman relies on *Moore v. Marathon Asset Management, LLC*, 973 So. 2d 1017, 1019 (Miss. Ct. App. 2008), a Court of Appeals case in which ownership of a property changed during the final one hundred and eighty days before the end of the tax sale redemption period. The property in *Moore* had been sold at "a foreclosure sale on June 13, 2003, only seventy-six days prior to the expiration of the equity of redemption[.]" *Id.* The Court of Appeals, evaluating whether Moore, the purchaser at foreclosure, had standing to challenge the tax sale, determined that "[a]s a purchaser at a foreclosure sale, Moore stepped into the shoes of the mortgagee, LaSalle Bank." *Id.* at 1022. Accordingly, the Court of Appeals determined that Moore had standing to dispute the validity of the tax sale. *Id.* The tax sale was then declared void due to the chancery clerk's failure to submit "necessary affidavits." *Id.*

¶18. Foreman argues that similar to Moore, DHP1, as the purchaser at foreclosure, stepped into the shoes of Emmett and was entitled to notice. Foreman's reliance on *Moore* is

7

misplaced. ***Moore***, in fact, holds that Moore, the purchaser at foreclosure sale, was not entitled to statutory notice but had standing to challenge the validity of the tax sale. ***Id.*** ("Ultimately, regardless of the fact that Moore was not the party entitled to notice, the chancery clerk did not follow the proper procedures by submitting the necessary affidavits."). ***Moore*** does not support Foreman's argument that DHP1 was entitled to the statutory notice.

¶19.    Reading Section 27-43-1 in conjunction with Section 27-43-3, the "reputed owner" referenced in Section 27-43-3 is the "record owner of the land sold as of one hundred eighty (180) days prior to the expiration of the time of redemption[.]"[2]  As the parties agree that Emmett was the record owner as of one hundred and eighty days prior to the expiration of the redemption period, Foreman's arguments that DHP1 was the party entitled to notice under Section 27-43-3 are without merit.[3]

¶20.    Having determined Emmett was entitled to notice, this Court must then determine if the statutory procedure was correctly followed.  "Any deviation from the statutorily mandated procedure renders the sale void." ***Campbell Props.***, 258 So. 3d at 277 (internal quotation mark omitted) (quoting ***Reed***, 987 So. 2d at 973).  Emmett, a resident of

_____

[2]This is not a novel statement, and this Court has yet to find a case in which the entity entitled to notice under Section 27-43-1 differed from the entity entitled to Section 27-43-3's notice requirements.  *See **Campbell Props.***, 258 So. 3d at 274; ***Reed***, 987 So. 2d at 973; ***Thoden v. Hallford***, 310 So. 3d 1156, 1160 (Miss. 2021).

[3]Further, to the extent that we assume DHP1 was the "reputed owner" and that service upon Eric would have been sufficient, notice to DHP1 of the tax sale was likewise insufficient in that it provided an incorrect parcel number identifying Lot 16 instead of Lot 17.

Mississippi, was entitled to notice of the maturity of the redemption period by "personal service, by mail, and by publication in an appropriate newspaper." *DeWeese Nelson Realty, Inc. v. Equity Servs. Co.*, 502 So. 2d 310, 312 (Miss. 1986) (citing Miss. Code Ann. § 27-43-3 (Supp. 1985)). The parties agree that notice by publication was completed on Emmett. The record, however, evidences that Emmett was not served by certified mail or personal service.

¶21. Evidence presented on summary judgment consisted of the record of the notices from the chancery clerk's office and Kellar's deposition. Kellar stated at his deposition he did not see in the record that his clerk's office had served Emmett. Instead, Kellar offered that the clerk's office had been notified that Van Wiser was a trustee for the property and that he felt that his staff had made a diligent search for interested parties related to the property. Kellar stated that personal service was served by a deputy on Van Wiser, not Emmett. Further, the notices in the record show that certified mail to Emmett was returned as undelivered for insufficient address.

¶22. "If personal service is not obtained and certified mail is returned undelivered, the clerk must then make a diligent 'search and inquiry' to locate the record landowner. The clerk must file an affidavit documenting the specific search and inquiry undertaken and must keep the affidavit as a permanent record." *Campbell Props.*, 258 So. 3d at 277 (citations omitted). In this case, the clerk's office filed a document entitled "First Affidavit - Tax Sale" but it does not contain a notary attestation and is merely signed by three deputy clerks. The Court

9

of Appeals, in reference to the affidavit requirements under Section 27-43-3, has found that a document "labeled as an 'Affidavit,'" that is "neither sworn nor notarized" and is "only signed by the deputy chancery clerks" is "merely a piece of paper with the word affidavit as its title" and "is insufficient to meet the statutory requirements of section 27-43-3." *Johnson v. Ferguson*, 58 So. 3d 711, 714-15 (Miss. Ct. App. 2011) (internal quotation marks omitted) (quoting *Thomas v. Greenwood Leflore Hosp.*, 970 So. 2d 273, 277 (Miss. Ct. App. 2007)). This Court agrees and finds that the clerk's office failed to file an affidavit that would prove a diligent search was undertaken to ascertain the address of Emmett as required by Section 27-43-3.

¶23.     Furthermore, an alternative and correct address for Emmett was listed on the Deed of Trust with The Peoples Bank that encumbered Lots 16 and 17.  This Court has addressed a similar situation in *Campbell Properties*, 258 So. 3d at 275 (internal quotation marks omitted), in which the clerk's office continued to use a mailing address to attempt to notify a landowner of the redemption period despite the notices being returned as "not deliverable as addressed."  The Court found that the clerk's office had failed to undertake a "diligent search and inquiry" when an alternative and correct address in the county land records was easily discoverable.  *Id.* at 277.  Based on *Campbell Properties* and the record before this Court, the clerk's office failed to undertake a diligent search for Emmett's address, which was easily discoverable on the Deed of Trust with The Peoples Bank that encumbered the very property in question.

10

¶24. Foreman contends that any error in the notice sent to Emmett by certified mail and personal service was harmless because Emmett was divested of his interest in the property by the time the clerk would have sent a second notice. Foreman's argument is without merit. To clear any cloud on Foreman's title obtained through the tax sale, this Court must determine if "[a]ny deviation from the statutorily mandated procedure" occurred because any such deviation "renders the sale void." *Campbell Props.*, 258 So. 3d at 277 (internal quotation mark omitted) (quoting *Reed*, 987 So. 2d at 973). Foreman's argument does not attempt to prove proper statutory notice was given but, instead, offers this Court excuses for why statutory notice was not required. Foreman argues that the clerk is not required "to continue to send notice to a record owner who loses title to the property through foreclosure prior to the end of the redemption period." The statutes do not, however, provide for a situation when the ownership changes, and they do not provide for the chancery clerk to contemplate such a change in ownership.

¶25. This Court must apply the plain meaning of a statute in which the words are clear and unambiguous. *Lawson v. Honeywell Int'l., Inc*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)). The meanings of Sections 27-43-1 and -3 are clear: the record owner as of one hundred and eighty days prior to expiration of the time of redemption is entitled to notice. Regardless of the change in ownership, Emmett was entitled to the notice and the statutory protections of a diligent search by the clerk's office. Foreman's argument is not supported by the plain

11

language of the statute.

¶26. Foreman also argues that any error in the notice sent to Emmett is harmless because Emmett failed to provide the clerk's office with a proper address, in violation of Mississippi Code Section 27-3-51(2) (Supp. 2024) (emphasis added), which provides in part:

> The chancery clerk shall require that the current mailing address and current business or employment telephone number, if any, and current residential telephone number, if any of each grantor and grantee be included on all deeds as a prerequisite for the deed to be filed for record after July 1, 1987. . . . The information provided by the grantor and grantee shall be true and correct and complete to the best of his or her knowledge and belief *under penalty of perjury* under Section 97-9-61.

¶27. Foreman relies on *Rush v. Wallace Rentals, LLC*, 837 So. 2d 191 (Miss. 2003), to support his argument. The Court in *Rush* held a tax sale was valid when Moffite, the landowner, had intentionally provided an incorrect address on the deed encumbering the property. *Id.* at 200. The Court evaluated Moffite's responsibilities under Section 27-3-51(2) and found that she had "failed to understand and appreciate the seriousness of her actions by allowing her first cousin to purchase the property in her (Moffite's) name and then by intentionally placing her daughter's address on the deed as her (Moffite's) correct mailing address." *Id.* at 199. Although Moffite was challenging the validity of the tax sale, Moffite testified that she was not "present at the closing of the sale of the land," that she did not consider the property to be hers and that her cousin "paid the taxes and collected the rent on the property." *Id.* at 198-99.

¶28. There was, however, evidence in *Rush* that the clerk's office had falsified the

affidavit required under Section 27-43-3. *Id.* at 198. Nevertheless, the Court affirmed the chancellor's finding that, other than a partially falsified affidavit, the clerk's office had strictly complied with the statutes. *Id.* at 199. The chancellor found, and the Court affirmed, that a search of the phone directories, tax collector's office car tag records, homestead exemption roll and quitclaim deed on the property had satisfied the diligent inquiry requirement. *Id.* at 200. The Court in *Rush* emphasized that its finding was fact-driven based on the peculiar facts of the case and the record before the Court. *Id.*

¶29. *Rush* is an outlier that is based upon intentional misrepresentations and is fact intensive. The facts in *Rush* are dissimilar to our facts. Our facts align more with *Campbell Properties*. Notably, the clerks in this case failed to find an easily discoverable address listed on a deed encumbering the property. While, just as in *Rush*, Emmett failed to provide a correct address, the Court in *Rush* did not find that Moffite's correct address was easily discoverable. Nor is there proof Emmett acted with intent. This Court will follow the precedent established in *Campbell Properties*.

¶30. Because the record owner did not receive the statutorily required notice and the affidavit requirements of Section 27-43-3 were not satisfied, the chancellor's determination that the tax sale is void is affirmed. The tax sale deviated from the statutorily mandated procedures. Further, the clerk's office failed to perform a diligent search of the land records to locate an easily discoverable alternative address for Emmett. Finally, the clerk's office also failed to file the necessary supporting affidavits required by Section 27-43-3. Summary

13

judgment in favor of DHP1 to award clear title is affirmed.

¶31.     Finally, we address Foreman's equitable argument that the tax sale is valid because Eric and Emmett have unclean hands.  Foreman contends that Eric and Emmett schemed together to foreclose all debts on the property and provide false information to the chancery clerk.  Foreman argues that Eric received notice of the sale and chose to ignore the tax lien.  These arguments are irrelevant as to whether the tax sale is valid under the statutes.  This Court's focus is to determine whether the tax sale statutes were satisfied.  It is clear from the record that the statutory procedure was not satisfied, and the chancellor's decision is affirmed.

## CONCLUSION

¶32.     Summary judgment in favor of DHP1 is affirmed.  It is uncontested that Emmett was the owner of record as of one hundred and eighty days prior to the expiration of the redemption period.  It is clear from the record that the statutory procedure for notifying Emmett was not satisfied.  Any other basis for reversing the chancellor's decision is irrelevant because this Court is tasked with considering if the statutory procedure was followed.  Foreman's arguments are without merit.

¶33.     **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.**